Lisa M. Schweitzer
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000

*Attorneys for Defendants HP Enterprise Services,*
*LLC, HP Enterprise Services UK Ltd, and Hewlett-*
*Packard (Canada) Co.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

In re:                                              :

**DELPHI CORPORATION,** *et al.*,                    :

                                                    :

-------------------------------------------------------------------X

**DELPHI CORPORATION,** *et al.*,                    :

                            **Plaintiffs,**          :

                            **v.**                   :

**EDS, EDS CORP., ELECTRONIC DATA**                  :
**SYSTEMS, ELECTRONIC DATA SYSTEMS**
**CORP., ELECTRONIC DATA SYSTEMS DE,**               :
**ELECTRONIC DATA SYSTEMS LTD. and**
**EDS CANADA INC.,**                                 :

                            **Defendants.**          :

-------------------------------------------------------------------X

**Chapter 11**
**Case No. 05-44481 (RDD)**

**Jointly Administered**

**Adv. Pro. No. 07- 02262 (RDD)**

REPLY OF HP ENTERPRISE SERVICES, LLC AND AFFILIATES
IN SUPPORT OF THEIR MOTION FOR AN ORDER
DISMISSING THE COMPLAINT WITH PREJUDICE,
AND VACATING CERTAIN
PRIOR ORDERS PURSUANT TO FED. R. CIV. P. 60 AND FED. R. BANKR. P. 9024

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................... 1

ARGUMENT ....................................................................................................................... 2

I. THE COMPLAINT MUST BE DISMISSED TO PROTECT DEFENDANTS'
   DUE PROCESS RIGHTS. ......................................................................................... 2

   A. The Bankruptcy Code Does Not Provide Authority For Sealing Of The
      Complaints ............................................................................................................. 3

   B. The Time For Service Of The Complaint Was Improperly Extended ........ 7

   C. Allowing Plaintiffs' Prosecution of the Complaint Would Violate The
      Defendants' Due Process Rights ......................................................................... 9

II. THE COMPLAINT FAILS TO PLEAD SUFFICIENT FACTS TO STATE A
    CAUSE FOR RELIEF AND SHOULD BE DISMISSED ...................................... 16

III. THE COMPLAINT IS BARRED BY JUDICIAL ESTOPPEL AND LACHES ..... 22

    A. Plaintiffs Are Judicially Estopped From Relitigating Their Prior
       Positions ................................................................................................................. 22

    B. The Complaint Should Be Dismissed Because Plaintiffs Have Failed
       To Establish That It Would Be Inequitable To Apply Laches ...................... 24

IV. THE COMPLAINT MUST BE DISMISSED FOR LACK OF PERSONAL
    JURISDICTION AND FAILURE TO TIMELY SERVE PROCESS AS TO
    THE FOREIGN DEFENDANTS .............................................................................. 25

CONCLUSION .................................................................................................................... 28

# TABLE OF AUTHORITIES

**Rules and Statutes**                                                                                                                           **Page(s)**

11 U.S.C.A. § 107(a) (West 2010) ........................................................................................... 3, 5

96 F.R.D. 81 (1983) ................................................................................................................ 8

128 Cong. Rec. H. 9848,
*reprinted in* 1982 U.S. Code Cong. & Admin. News 4434................................................ 8

Fed. R. Bankr. P. 9018(3)........................................................................................................ 6

Fed. R. Civ. P. 3,
Advisory Committee's Note, ¶ 4 ........................................................................................ 8

**Cases**

AICPA v. Affinity Card, Inc.,
8 F. Supp. 2d 372 (S.D.N.Y. 1998) .................................................................................... 27

Anchor v. Novartis Grimsby Ltd.,
282 App'x 872 (2d Cir. 2008) ........................................................................................... 26

Angell v. Ber Care, Inc. (In re Caremerica, Inc.),
409 B.R. 737 (Bankr. E.D.N.C. 2009)................................................................................ 16, 17

Ashcroft v. Iqbal,
129 S. Ct. 1937 (2009)....................................................................................................... *passim*

Ashley Elizabeth Scianna Arora Inv. Trust v. Amegy Bank, Nat'l Assoc.
(In re Bigler LP),
Adv. No. 10-03029, 2010 Bankr. LEXIS 1596, (Bankr. S.D. Tex. May 18, 2010) .......... 19

Bell Atlantic Corp. v. Twombly,
550 U.S. 544 (2007) .......................................................................................................... 18, 21

Cohen v. Tic Fin. Sys. (In re Ampace Corp.),
279 B.R. 145 (Bankr. D. Del. 2002)................................................................................... 24

Conopco, Inc. v. Campbell Soup Co.,
95 F.3d 187 (2d Cir. 1996) ................................................................................................ 25

E. Refractories Co. v. Forty Eight Insulations, Inc.,
187 F.R.D. 503 (S.D.N.Y. 1999)......................................................................................... 9

F.D.I.C. v. Reiner,
144 F.R.D. 599 (D. Me. 1992)............................................................................. 21

Gitto v. Worcester Telegram & Gazette Corp. (In re Gitto Global Corp.),
422 F.3d 1 (1st Cir. 2005).................................................................................. 5

Global Crossing Estate Representative v. Alta Partners Holdings LDC
(In re Global Crossing, Ltd.),
385 B.R. 52 (S.D.N.Y. 2008) ............................................................................ 8

Gold v. Winget (In re NM Holdings Co., LLC),
407 B.R. 232 (Bankr. E.D. Mich. 2009)............................................................ 18

Gordon v. Slaughter (In re Slaughter Co. and Assoc.),
242 B.R. 97 (Bankr. N.D. Ga. 1999) ................................................................ 11-12

Hixon v. Highsmith,
147 F. Supp. 801 (E.D. Tenn. 1957) ................................................................. 8

Huddleston v. Nelson Bunker Hunt Trust Estate,
109 B.R. 197 (N.D. Tex. 1989) ......................................................................... 13-14

Humpherys v. Nager,
962 F. Supp. 347 (E.D.N.Y. 1997)..................................................................... 21

In re Fibermark, Inc.,
330 B.R. 480 (Bankr. D.Vt. 2005)...................................................................... 5-6

In re Food Mgmt. Group LLC
359 B.R. 543 (Bankr. S.D.N.Y. 2007)................................................................ 5

In re Grossinger's Assoc.,
184 B.R. 429 (Bankr. S.D.N.Y. 1995)................................................................ 23

In re McLaughlin,
415 B.R. 23 (Bankr. D.N.H. 2009)..................................................................... 18

In re Metromedia Fiber Network, Inc.,
416 F.3d 136 (2d Cir. 2005) .............................................................................. 4-5, 6

In re Neal,
461 F.3d 1048 (8th Cir. 2006) ........................................................................... 6

In re Orion Pictures Corp.,
21 F.3d 24 (2d Cir. 1994) .................................................................................. 3, 6

In re Phar-Mor, Inc.,
191 B.R. 675 (Bankr. N.D. Ohio 1995).............................................................. 6

iii

In re Robert Landau Assoc., Inc.,
50 B.R. 670 (Bankr. S.D.N.Y. 1985)................................................................. 7

Islam v. Goord,
No. 05-cv-7502 (RJH), 2006 U.S. Dist. LEXIS 71853 (S.D.N.Y. Sept. 29, 2006) ........... 26

Itel Container Int'l Corp. v. Atlanttrafik Express Serv., Ltd.,
686 F. Supp. 438 (S.D.N.Y. 1988),
rev'd on other grounds, 982 F.2d 765 (2d Cir. 1992)........................................................ 26-27

James S. Feltman v. Keybank, N.A. (In re Levitt & Sons, LLC),
No. 07-19845-BKC-RBR, 2010 Bankr. LEXIS 1284 (Bankr. S.D. Fla. Apr. 16, 2010) ... 17, 18

Johns-Manville Co. v. Chubb Ins. Co. (In re Johns-Manville Co.),
600 F.3d 135 (2d Cir. 2010) ............................................................................. 13

Krupski v. Costa Crociere S.P.A.,
No. 09-337, 2010 WL 2243705 (June 7, 2010)................................................... 15

Kunica v. St. Jean Fin. Inc.,
233 B.R. 46 (Bankr. S.D.N.Y. 1999)................................................................. 24

Lane Hollow Coal Co. v. Dir., Office of Workers' Comp.
Programs, U.S. Dep't of Labor,
137 F.3d 799 (4th Cir. 1998)............................................................................. 10, 14

LinkCo, Inc. v. Akikusa,
615 F. Supp. 2d 130 (S.D.N.Y. 2009) ............................................................... 25

Lorenz v. CSX Corp.,
1 F.3d 1406 (3d Cir. 1993) ............................................................................... 20

Mullane v. Cent. Hanover Bank & Trust Co.,
339 U.S. 306 (1950) ......................................................................................... 10

N. Bay Gen. Hosp., Inc. v. McNaull (In re N. Bay Gen. Hosp., Inc.),
404 B.R. 429 (Bankr. S.D. Tex. 2009)............................................................... 7

New York State Nat'l Org. for Women v. Pataki,
261 F.3d 156 (2d. Cir 2001) ............................................................................. 14

New Bedford Capacitor, Inc. v. Sexton Can Co.,
301 B.R. 375 (Bankr. D. Mass. 2003) ............................................................... 11

Norwest Bank Worthington v. Ahlers,
485 U.S. 197 (1988) ......................................................................................... 5

O'Callaghan v. Sifre,
242 F.R.D. 69 (S.D.N.Y. 2007) .......................................................................................... 27

Official Comm. Of Unsecured Creditors of Hydrogen v. Leo Blomen
(In re Hydrogen, L.L.C.),
No. 08-14139 (AJG), 2010 WL 1609536 (S.D.N.Y. Apr. 20, 2010) .................................. 18

Pell v. Pall Corp.,
No. CV 07-92 (LDW), 2007 WL 2445217 (E.D.N.Y. Aug. 20, 2007).............................. 21

People of State of Ill. v. Sullivan (In re Chi. Rys. Co.),
175 F.2d 282 (7th Cir. 1949),
aff'd, 935 F.2d 1290 (5th Cir. 1991), cert. denied, 338 U.S. 850 (1949).......................... 13

Redding v. Essex Crane Rental of Alabama,
752 F.2d 1077 (5th Cir. 1985) ........................................................................................... 8

Rouge Steel Co. v. Omnisource Corp. (In re Rouge Indus.),
No. A05-52242 (PBL), 2006 WL 148946 (Bankr. D. Del. 2006) ...................................... 11

S.E.C. v. Gilbert,
82 F.R.D. 723 (S.D.N.Y. 1979)........................................................................................... 27

Sefton v. Jew,
204 F.R.D. 104 (W.D. Tex. 2000)....................................................................................... 21

Silverman v. H.I.L. Assocs. (In re Allou Distribs., Inc.),
387 B.R. 365 (Bankr. E.D.N.Y. 2008) ............................................................................... 17-18

Spano v. Boeing,
No. 3:06-cv-00743 (DRH), 2008 U.S. Dist. LEXIS 54122 (S.D. Ill. July 16, 2008)......... 6

State v. Almy Bros.,
No. 90-CV-818 (McCurn), 1998 WL 185541 (N.D.N.Y. Apr. 15, 1998) .......................... 3

U.S. Brass & Copper Co. v. Caplan (In re Century Brass Prods., Inc.),
22 F.3d 37 (2d Cir.1994) ..................................................................................................... 8-9

U.S. v. Jerry,
487 F.2d 600 (3d Cir. 1973) ............................................................................................... 3

U.S. v. Uccio,
940 F.2d 753 (2d Cir. 1991) ............................................................................................... 3

Vallejo v. Investronica, Inc.,
2 F. Supp. 2d 330 (W.D.N.Y. 1998)................................................................................... 27

Valley Media, Inc. v. Borders, Inc. (In re Valley Media, Inc.),
  288 B.R. 189 (Bankr. D. Del. 2003).....................................................................................17

Verkouteren v. Blackrock Fin. Mgmt., Inc.,
  No. 99-9005, 2000 WL 298255 (2nd Cir. Mar. 21, 2000) ................................................25

Wik v. City of Rochester,
  No. 07-cv-6541 (CJS), 2008 WL 4911805 (W.D.N.Y. Nov. 13, 2008)............................21

Zapata v. City of New York,
  502 F.3d 192 (2d Cir. 2007) ..............................................................................................15

Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,
  402 F. Supp. 262 (E.D. Pa. 1975).......................................................................................26

Zucker v. Freeman (In re Netbank, Inc.),
  424 B.R. 568 (Bankr. M.D. Fla. 2010) ..............................................................................17

**Other Authorities**

Alan N. Resnick & Henry J. Sommer eds., 15th ed. 1992
  10 COLLIER ON BANKRUPTCY ¶ 9018.02 ...............................................................................7

HP Enterprise Services, LLC, formerly known as Electronic Data Systems Corporation, HP Enterprise Services UK Ltd, formerly known as Electronic Data Systems Ltd., and EDS Canada, Inc., now Hewlett-Packard (Canada) Co. by operation of merger, (together, the "Defendants"), by and through their undersigned counsel, respectfully submit this reply memorandum of law in further support of their Motion to Dismiss (as defined below):[1]

## PRELIMINARY STATEMENT

1.     Plaintiffs' attempts to rationalize their strategy of sealing and delaying the prosecution of various avoidance actions fully reveals both the inconsistency of their position and the reasons their tactics cannot be allowed to stand as a matter of due process.

2.     Plaintiffs argue that the Defendants were not prejudiced by a two and a half year delay in unsealing the Complaint and service of process, because any counterparty who received payments from the Debtors in the ninety days preceding their bankruptcy filing should have been on notice that they were one of the 177 defendants against whom the Debtors intended to prosecute claims out of over 11,000 potential causes of action.  Yet Plaintiffs also assert that the sealing of the complaints and secreting the identities of potential defendants was warranted — indeed required — for that entire period of time to "protect the Debtors' commercial relationships" with the defendants.

3.     Both positions cannot be true and, more importantly, Plaintiffs cannot rely on either argument to impermissibly shift the burden onto the Defendants to investigate whether the Debtors intended to preserve claims against them for several years past the expiration of the

---

[1]  Capitalized terms not defined herein shall have the meaning ascribed to them in the EDS Defendants' Motion for an Order Dismissing the Complaint with Prejudice, and Vacating Certain Prior Orders Pursuant to Fed. R. Civ. P. 60 and Fed. R. Bankr. P. 9024 [D.I. 16] (the "Motion to Dismiss").  For the avoidance of doubt, the Defendants adopt and incorporate by reference the arguments made by other defendants in response to the complaints filed against them and the Reorganized Debtors' Omnibus Response to Motions Seeking, Among Other Forms of Relief, Orders to Vacate Certain Procedural Orders Previously Entered by This Court and to Dismiss the Avoidance Actions Against the Moving Defendants [D.I. 30] (the "Omnibus Response").

relevant limitations period, and even after the Debtors had confirmed their Modified Plan. Plaintiffs similarly cannot defend the due process violations that resulted from their strategic delay in notifying defendants of the avoidance actions by reference to the purported burdens that were avoided for other counterparties who did *not* survive as defendants, rather than the harms resulting to the Defendants who are now being sued. Plaintiffs' causes of action also are barred by the statute of limitations, prior abandonment of the causes of action, laches and a failure to establish proper service or personal jurisdiction over the foreign defendants.

4.     Moreover, even assuming *arguendo* the prosecution of the Complaint could survive due process scrutiny (which it cannot), Plaintiffs effectively concede the inadequacy of the Complaint under the basic pleading standards of Rule 8(a)(2) of the Federal Rules of Civil Procedure (the "Rules"), made applicable through Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Given Plaintiffs' failure to correct these facial deficiencies in the two and a half years since the Complaint has been filed, the Complaint should be dismissed as a matter of law and equity.

## ARGUMENT

## I.     THE COMPLAINT MUST BE DISMISSED TO PROTECT DEFENDANTS' DUE PROCESS RIGHTS

5.     Plaintiffs fail to acknowledge the cumulative effect that the Extension Orders had to deprive the Defendants of their due process rights, attempting instead to separately justify each aspect of the orders to seal and delay service of the Complaint. Plaintiffs' post-hoc attempts to do so fail, as when viewed in light of the full facts known today, the Extension Orders were not only unjustified on the merits, but entered without providing the Defendants with meaningful notice and opportunity to respond. Consequently, the Extension Orders and the

2

Modified Plan Confirmation Order should be vacated as against the Defendants pursuant to Rule 60(b), as made applicable by Bankruptcy Rule 9024.[2]

## A. The Bankruptcy Code Does Not Provide Authority For Sealing Of The Complaints

6.      Plaintiffs' asserted basis for sealing the complaints, when viewed in the entirety of their now apparent strategy over the last several years, simply does not pass muster under section 107(b) of the Bankruptcy Code. Section 107 codifies the presumption of public access to judicial pleadings, providing that unless the standards of section 107(b) are satisfied, pleadings are to be filed openly. 11 U.S.C.A. § 107(a) (West 2010). As such, section 107 permits a limited ability to seal "commercial information," defined as information "which would cause an *unfair advantage to competitors* by providing them information as to the commercial operations of the debtor."[3] In re Orion Pictures Corp., 21 F.3d 24, 27 (2d Cir. 1994) (citation and quotation marks omitted) (emphasis added).

7.      The alleged preference claims against the Defendants set forth in the Complaint do not provide information regarding the Debtors' commercial operations to their competitors, as most poignantly evidenced by Plaintiffs' willingness to unseal the Complaint in its entirety upon service on the Defendants. Instead, Plaintiffs press an argument that sealing the complaints was necessary throughout the bankruptcy to prevent counterparties from learning they had been sued

---

[2]    To the extent that the Extension Orders are interlocutory, the Defendants alternatively ask that the Court use its discretion to revise the orders. Courts have discretion to revise interlocutory orders at any time prior to a final judgment. U.S. v. Jerry, 487 F.2d 600, 604 (3d Cir. 1973) (noting that "the power to grant relief from erroneous interlocutory orders, exercised in justice and good conscience, has long been recognized as within the plenary power of courts until entry of final judgment and is not inconsistent with any of the Rules."); U.S. v. Uccio, 940 F.2d 753, 758 (2d Cir. 1991) (quoting Jerry that courts have "inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so"); State v. Almy Bros., No. 90-CV-818 (McCurn), 1998 WL 185541, at *1 (N.D.N.Y. Apr. 15, 1998) (court may exercise discretion to amend orders prior to judgment "to correct a clear error or prevent manifest injustice"). The discretionary revision of the Extension Orders would be appropriate here because the Extension Orders were erroneously entered for the reasons set forth below, and it would be manifestly unjust to allow them to continue to govern this adversary proceeding.

[3]    Nowhere have Plaintiffs suggested that the sealing of the complaints was justified under section 107(b)'s other exception for scandalous or defamatory information.

3

in order to preserve business relationships. This argument falls flat both on the law and on the facts. Plaintiffs cite to no cases where a court permitted a debtor to seal information for the sole purpose of concealing it from contract counterparties to encourage them to continue to transact business. More strikingly, Plaintiffs themselves also argue there was no harm to sealing the Complaint because the Defendants were on effective notice of the avoidance actions because they had allegedly received payments within the preference period. If so (a fact the Defendants do not concede), there could not have been any harm in publicly filing the Complaint. However, the Plaintiffs cannot have it both ways. Plaintiffs' further suggestion that sealing was necessary to avoid commercial harm and potential unfair advantage to competitors is particularly ironic given the conclusory (and wholly inadequate) manner in which the Complaint is pled — not even purporting to identify the proper plaintiff or defendant for each alleged transfer, much less the nature of the alleged commercial transaction underlying the transfers.

      8.     Moreover, even assuming *arguendo* that allowing the sealing of the Complaint could have been justified for a limited period of time (e.g. while the Debtors believed a 100-cent Plan likely could have become effective), section 107 was not intended to buy the Debtors more time past a limitations period merely to decide who to sue. If Plaintiffs' position is accepted, there is no reason not to expect that debtors will routinely invoke this tactic to delay pursuing avoidance actions in the purported furtherance of their reorganization efforts, while at the same time inducing the targeted defendants to continue to transact business with them.

      9.     Plaintiffs cannot salvage the sealing of the Complaint as warranted under the bankruptcy court's general equitable powers. As the Second Circuit made clear in <u>In re Metromedia Fiber Network, Inc.</u>, 416 F.3d 136 (2d Cir. 2005) (citation and quotation marks omitted), where relief is unavailable under a specific provision of the Bankruptcy Code, a

4

bankruptcy court lacks the power "to create substantive rights that are otherwise unavailable under applicable law." Id. at 142. Specifically, where a debtor sought approval of non-debtor releases, the Court held that because the releases fell outside of the scope of the section of the Bankruptcy Code that specifically authorized non-debtor releases, the court lacked power to approve those releases by resort to its general equitable powers under section 105 or otherwise. Id.; see also Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206 (1988) ("whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code.").

10. Cases decided following Metromedia uniformly recognize that section 107(b) represents both the beginning and the end of a bankruptcy court's analysis in determining whether court filings may be sealed.[4] See Gitto v. Worcester Telegram & Gazette Corp. (In re Gitto Global Corp.), 422 F.3d 1, 10-11 (1st Cir. 2005) ("The statutory language of § 107 . . . evinces a 'clear and unmistakable' intent to cabin the inherent supervisory authority of district courts over their own records and files when it comes to issues of public access to papers filed in a bankruptcy case."); In re Food Mgmt. Group LLC, 359 B.R. 543, 554 (Bankr. S.D.N.Y. 2007) ("§ 107 made an important change in the common law regarding public access to bankruptcy court records. It is no longer left to the bankruptcy court to balance the interests of the public and private parties in determining whether to seal records from public view. Under § 107(a), unless a paper filed in a bankruptcy court falls within one of the express exceptions in § 107(b) or (c), it must be open to public inspection."); In re Fibermark, Inc., 330 B.R. 480, 506 (Bankr. D.Vt. 2005) ("If the § 107(b) exceptions do not apply, the inquiry is complete and the Court's

---

4   In any event, as set forth in the reply brief filed by Affinia Group Holdings, Inc. (Adv. No. 07-02198) incorporated herein by reference, even if bankruptcy courts could seal pleadings that did not satisfy the standards of Section 107(b), sealing of the Complaint fails to pass muster even under cases construing a district court's general sealing powers.

5

decision will favor public access."); see also In re Phar-Mor, Inc., 191 B.R. 675, 679 (Bankr. N.D. Ohio 1995) ("Because Congress enacted an express statutory scheme, issues concerning public disclosure of documents in bankruptcy cases should be resolved under § 107 . . . the mandatory language [of which] negates the need" for an equitable balancing of interests in disclosure).[5] The Debtors cite to no case decided since Metromedia that seals records outside of the statutory confines of section 107(b).

11.      Plaintiffs also cannot claim the defects in the Extension Orders were remedied by simply unsealing the Complaint almost two and a half years later. The cases cited by Plaintiffs on the remedy of unsealing involve instances where the party contesting the sealing had a general awareness of the substance of the material being sealed.[6] Here, the Defendants lacked knowledge not only of the allegations in the Complaint, but also of the fact that any complaint had been brought against them at all, which deprived them of basic due process.

12.      Furthermore, while Plaintiffs suggest these arguments are mooted by the provisions of Bankruptcy Rule 9018 that contemplate ex parte sealing, that rule expressly states that where a sealing order is entered without notice, "any entity affected thereby may move to vacate or modify the order, and after a hearing on notice the court shall determine the motion." Fed. R. Bankr. P. 9018(3). Given that the Extension Orders were entered without proper notice,

---

[5]      Indeed, the Second Circuit foreshadowed this result in its seminal case discussing section 107(b), In re Orion Pictures Corp., 21 F.3d at 28. In Orion, the appellant argued that the lower court erred by not interpreting section 107(b) with reference to broader principles developed outside of the Bankruptcy Code governing trade secrets. The Orion court rejected this argument, looking instead to the "carefully drafted" section 107(b), which "statute flatly rejects the very concept that [appellant] is advancing." Id.

[6]      See Spano v. Boeing, No. 3:06-cv-00743 (DRH), 2008 U.S. Dist. LEXIS 54122, at *5 (S.D. Ill. July 16, 2008) (unsealing pleadings that had been filed under seal in accordance with a confidentiality agreement between the parties to the litigation without first seeking the court's authority to seal); In re Neal, 461 F.3d 1048, 1056 (8th Cir. 2006) (reversing sealing of a creditor list of a bankrupt judge who had allegedly taken improper loans from attorneys appearing before her). These cases are clearly distinguishable from the facts at issue here, where the Defendants were not aware of the allegations in the sealed complaints, or even that they had been named as defendants. This failure of meaningful notice has not been and cannot be cured merely by a subsequent unsealing of the Complaints.

Bankruptcy Rule 9018 makes plain that sealing orders are not inviolate and can be reconsidered in hindsight. Moreover, given the lack of notice, Plaintiffs have the burden of proof to justify the Extension Orders: "If a protective order that has been obtained *ex parte* under Rule 9018 is thereafter challenged, the burden is upon the party who obtained the order to demonstrate the appropriateness of its enforcement and continuation." 10 COLLIER ON BANKRUPTCY ¶ 9018.02 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. 1992); In re Robert Landau Assoc., Inc., 50 B.R. 670, 674 (Bankr. S.D.N.Y. 1985) ("since the order was entered *ex parte* [on the motion of the trustee], the trustee bears the burden of demonstrating the appropriateness of its enforcement and continuation.") (citation omitted).[7] Even assuming *arguendo* that the proper means of remedying the improper sealing of the Complaint were its unsealing, the Plaintiffs fail to adequately address why the Complaint should have remained under seal once the supposed grounds for not making the Complaint public — the short-term need to preserve business relationships in the face of a 100-cent plan that once effective would preclude the prosecution of any avoidance actions — was eliminated and the Debtors had filed the Modified Plan under which they intended to preserve and pursue only 177 avoidance actions. Most significantly, the Plaintiffs cannot rely on *ex parte* sealing orders that are facially subject to reconsideration under the Rules as a basis for arguing there has been no deprivation of Defendants' due process rights as a result of the prolonged sealing of the Complaint.

**B.    The Time For Service Of The Complaint Was Improperly Extended**

13.    Plaintiffs fail to even respond to the black-letter law stating that procedural rules, such as Rule 4, cannot be used to expand substantive rights. It is impermissible for the Debtors

---

[7]    See also N. Bay Gen. Hosp., Inc. v. McNaull (In re N. Bay Gen. Hosp., Inc.), 404 B.R. 429, 440 (Bankr. S.D. Tex. 2009) (motion to unseal pursuant to 9018 should be granted unless the parties that sought sealing have met the burden to "adduce sufficient evidence to rebut the presumption" of public access, as "the pleadings should not remain sealed if no party ever established that they are entitled to protection under § 107(b).").

to use such a procedural rule to overcome a statute of limitations period codified by Congress in order to prosecute avoidance actions once the facts have become more favorable to them.  See generally Global Crossing Estate Representative v. Alta Partners Holdings LDC (In re Global Crossing, Ltd.), 385 B.R. 52, 82 (S.D.N.Y. 2008) (denying the request to use an order granted pursuant to Rule 4(m) to extend statutes of limitations while searching for unidentified prospective defendants, because it "would at best be debatable.").[8]

14.    More fundamentally, allowing Plaintiffs' strategic and calculated use of various sealing and extension provisions to delay informing the Defendants of the existence of the Complaint would turn Rule 4 on its head.[9]  While extensions under Rule 4 are intended to give plaintiffs (upon a proper showing) additional time to enable effective service,[10] Plaintiffs instead have used it to intentionally conceal the Complaint and avoid the need for prompt service. Plaintiffs cite to no cases where the time for service of a complaint was extended strategically to delay the commencement of a proceeding,[11] and allowing a plaintiff to manipulate Rule 4 in this

---

[8]    Rule 4(m)'s requirement of timely service also must be read in conjunction with Rule 3, made applicable here by Bankruptcy Rule 7003. The 1937 Adversary Committee Note on Rule 3 notes the interrelated nature of Rules 3 and 4, acknowledging that an argument that "the mere filing a complaint stops the running of the statute" of limitations would raise questions about rules of procedure affecting substantive rights. The Note found that Rule 4's requirement of prompt service would "reduce the chance of such a question arising." Fed. R. Civ. P. 3, advisory committee's note, ¶ 4.  See Hixon v. Highsmith, 147 F. Supp. 801, 803 (E.D. Tenn. 1957) (Rules 3 and 4 "contemplate the issuing of a summons and the placing of a summons in proper channels for service in order to toll the statute of limitations.").

[9]    See Redding v. Essex Crane Rental of Alabama, 752 F.2d 1077, 1078 (5th Cir. 1985) (affirming the dismissal of a complaint as an "obvious misuse of the judicial process" where the plaintiff had failed to serve the defendant with the complaint, effectively "blocking the right of the potential defendant to know that a suit had been filed against it in federal court, blocking discovery and blocking the right of the putative defendant to preserve its defenses.").

[10]    The legislative history of Fed. R. Civ. P. 4 also makes it clear that the onus is on a plaintiff to ensure expeditious prosecution of its complaint, requiring "a diligent plaintiff [to] preserve the cause of action is consistent with the policy behind the time limit for service and with statutes of limitation, both of which are designed to encourage prompt movement of civil actions in the federal courts." 128 Cong.Rec.H. 9848, *reprinted in* 1982 U.S. Code Cong. & Admin. News 4434; 96 F.R.D. 81, 120 (1983) (Appendix A-- Congressional Record).

[11]    Indeed, the Second Circuit has rejected the argument that debtors are entitled to vary the statute of limitations for avoidance actions based on their interest in preserving assets and furthering reorganization. The court in U.S. Brass & Copper Co. v. Caplan (In re Century Brass Prods., Inc.), 22 F.3d 37, 41 (2d Cir.1994) was not

8

manner — all the while filing pleadings emphasizing how many potential avoidance actions are being abandoned, and their interest in protecting continuing business relationships — would set a dangerous precedent that undoubtedly would be employed by future debtors to strategically expand their time to bring avoidance actions.[12] Nor can Plaintiffs justify this unprecedented use of Rule 4 by reference to the protection of interests of parties who are not now defendants.

15. While Plaintiffs argue that they were not required to demonstrate good cause, Plaintiffs do not even attempt to establish each of the factors that would be required to justify an extension in the absence of good cause, namely: "(1) whether the applicable statute of limitations would bar the refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for relief from the provision." E. Refractories Co. v. Forty Eight Insulations, Inc., 187 F.R.D. 503, 506 (S.D.N.Y. 1999). As described in the Motion to Dismiss, these factors cut against Plaintiffs' attempts to justify the Extension Orders.

## C. Allowing Plaintiffs' Prosecution of the Complaint Would Violate The Defendants' Due Process Rights

16. Plaintiffs allege that solely because no judgment has yet been entered, none of the Defendants' interests that are protected by the Due Process clause have been implicated by

---

"persuaded by Century's argument that DIPs and trustees should be treated differently because a DIP is generally involved in attempts to reorganize and continue the debtor's business whereas a trustee is generally involved in attempts to liquidate it, and that subjecting a DIP to the two-year limitations period would unduly hobble its efforts to reorganize or to negotiate with creditors for further extensions of credit."

[12] While Plaintiffs cite to an unpublished order entered in In re Ames Dep't Stores, Inc., No. 01-42217 (REG) (Bankr. S.D.N.Y. Feb. 3, 2004), the debtors there appropriately disclosed the adversary defendants' identities. See Motion of Debtors for Order and Scheduling Order Extending the Time for Service of Process With Respect to Certain Preference Actions at 2 and Exhibit B ("Ames Motion," Docket No. 2464). The Ames complaints had also already been filed when the relief was requested, Ames Motion at 3, and only one extension of time to complete service was requested. More fundamentally, the Ames debtors sought only a simple extension under Rule 4 and not the combination of sealing and deferred service which Plaintiffs here crafted to entirely conceal that the Defendants had been sued.

9

allowing a two and a half year delay in effective commencement of the avoidance action through the entry of the Extension Orders and the sealing of the Complaint. However, the entry of the Extension Orders violated the Defendants' protected interest in the essence of due process itself — the requirement that litigation be commenced within a limitations period and the right to receive meaningful notice at a meaningful time of an action that adversely affected their interest. Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections . . . The notice must be of such nature as reasonably to convey the required information . . . "); Lane Hollow Coal Co. v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor, 137 F.3d 799, 807 (4th Cir. 1998) ("The Due Process Clause does not create a right to *win* litigation; it creates a right *not to lose* without a fair opportunity to defend oneself."). The sealing of the Complaint, the Debtors' decision to not disclose to the Defendants that they were potential targets and the extension of the service deadlines well beyond the time originally sought for the Debtors to implement their 100-cent Plan, taken together, effectively more than doubled the statute of limitations for bringing the preference action. While Plaintiffs attempt to separate these harms, the extraordinary relief Plaintiffs sought in the Extension Motions had the cumulative effect of depriving the Defendants of any meaningful notice that the requested relief implicated their rights and the right to be able to plan a timely defense against the adversary action, while at the same time allowing the Debtors to induce the Defendants to continue doing business with them for several years.

10

17.     Moreover, the Plaintiffs' use of the Extension Orders to seal the content of the

Complaint from the Defendants, delay serving or otherwise notifying the Defendants regarding

the existence of the Complaint until after the statute of limitations had passed twice over, and

obtain an additional two and a half years to research and supplement claims cumulatively results

in an equivalent deprivation of due process as if the Complaint had not been filed. This is

particularly the case where the Plaintiffs now seek to cure the facial deficiencies in the

Complaint through a proposed informal production of information to the Defendants. Allowing

Plaintiffs to assert new, refined claims against the Defendants or to otherwise remedy the

inadequacies of the Complaint would both solidify and compound the deprivation of due process.

In equivalent situations where defendants were not on notice of a claim, courts have refused to

allow plaintiffs to amend a complaint to assert additional claims out of concern for due process.

See Rouge Steel Co. v. Omnisource Corp. (In re Rouge Indus.), No. A05-52242 (PBL), 2006

WL 148946, at *4 (Bankr. D. Del. 2006) (denying a Plaintiff's Rule 15 motion to amend a

complaint after the statute of limitations had expired because "bootstrap[ing] new transactions

onto viable actions is an abuse of due process which cannot be allowed, even to maximize

recovery to the estate.") (internal citations omitted); New Bedford Capacitor, Inc. v. Sexton Can

Co., 301 B.R. 375, 380 (Bankr. D. Mass. 2003). The same due process concerns that prohibit

amendment in such situations prohibit Plaintiffs here from pursuing claims actively kept from

the Defendants well past the passage of the limitations period, much less amending the

Complaint to state viable claims (particularly where Plaintiffs suggested they were reviewing the

claims during the prior extension periods). See Gordon v. Slaughter (In re Slaughter Co. and

Assoc.), 242 B.R. 97, 102-03 (Bankr. N.D. Ga. 1999) ("To accept Trustee's argument that the

vaguer the allegations in a complaint, the more likely it is that claims may be added after

11

expiration of the statute of limitations contradicts substantive due process concerns which arise in connection with the § 546 statute of limitations.").

18. This Court recognized the Defendants' protected interest when it entered the Case Management Order establishing procedures governing, among other things, the service of motions. The Case Management Order, as amended, required the Debtors to notice those with a particularized interest in the Extension Motions. (Supplemental Case Management Order ¶ 15.) However, Plaintiffs failed to separately notice such interested parties in direct contravention of the Court's order. Even when parties, such as the Defendants, happened to receive a copy of the Extension Motions by circumstance of their inclusion on the general Rule 2002 service list, Plaintiffs' obfuscation of the identify of the affected defendants left it entirely unclear that the Extension Orders would affect such parties' interests. Not only was service on the Rule 2002 service list alone insufficient to notify the Defendants that they were receiving the motion as prospective defendants, but the Extension Motions also contained language suggesting that the Extension Motions had limited applicability and that the Debtors would effectively abandon many categories of claims. (Preservation of Estate Claims Procedures Motion ¶ 17.) And it would be the height of irony to conclude that defendants who actively sought to ensure they be given timely notice of actions that would affect their rights should be placed in any worse position as a result of receiving pleadings that did not identify them as targets (and instead suggested that claims against them would *not* be pursued) than other defendants who did not get notice at all. Similarly, the adversarial system places the burden on a plaintiff to notify a defendant of a pending action through the filing and service of a complaint; it would turn this system on its head to accept Plaintiffs' argument that they can extend a limitations period and shift the burden onto a potential defendant to ferret out whether it will be sued while placing the

12

complaint under seal and not providing even generalized disclosure that could enable the defendant to determine if it is a target.

19. Where the Defendants were deprived of meaningful notice or an opportunity to be heard on the Extension Motions, or a right to speedily defend against the Complaint, the future provision of notice or an opportunity to be heard as to other relief in the case will not cure that defect. The Extension Orders, coupled with the inadequacy of disclosure in the disclosure statement, unalterably changed the rules governing the litigation of the Complaint by doubling the statute of limitations, effectively shifting the burden to the Defendants to actively investigate whether a lawsuit had been brought against them in the face of repeated statements suggesting they in fact would not be targets of such litigation, and the Plaintiffs' strategic and prolonged decision to secrete the identity of such Defendants. Having been deprived of meaningful notice of the Extension Orders that would have allowed them to respond at the time, the Defendants' due process rights can only be vindicated through vacatur of the prior orders. Johns-Manville Co. v. Chubb Ins. Co. (In re Johns-Manville Co.), 600 F.3d 135, 138 (2d Cir. 2010) (". . . we conclude that Chubb was not afforded constitutionally sufficient notice of the proceedings that led to the entry of the 1986 orders by the bankruptcy court. As such, Chubb is not bound by the bankruptcy court's 2004 interpretation of those orders"); People of State of Ill. v. Sullivan (In re Chi. Rys. Co.), 175 F.2d 282, 290 (7th Cir. 1949), aff'd, 935 F.2d 1290 (5th Cir. 1991), cert. denied, 338 U.S. 850 (1949) (". . . no notice was given, until after opportunity of the debtors to avail themselves of the statutory remedy had ceased to exist . . . a court of equity may and should intervene to defeat a fraudulent discriminatory assessment, which the debtors had no opportunity to attack by any other method."); Huddleston v. Nelson Bunker Hunt Trust Estate, 109 B.R. 197, 201 (N.D. Tex. 1989) ("Similarly, a judgment entered in a manner inconsistent with due process

13

of law is void . . . Due process in the bankruptcy context requires that individual notice be given before rights be affected. Hence, if Huddleston is correct that his children's due process rights were violated, that portion of the reorganization plan binding the children must be set aside") (citations omitted).

20.    Plaintiffs themselves cite to no cases holding that a deprivation of due process at one phase of a proceeding can be remedied through provision of due process in subsequent phases. While Plaintiffs argue, without citation to any authority, that the Court must require defendants to show prejudice, no showing of prejudice can be required. As the Second Circuit has not ruled on the issue,[13] the Fourth Circuit's decision in Lane Hollow is instructive. Lane Hollow, 137 F.3d at 807-08. In Lane Hollow, the court found that a coal mine operator had been denied its due process rights as a result of a lengthy delay in receiving notice of a black lung benefits claim against it. The Lane Hollow court clarified that where, as here, "core" due process rights to notice and a hearing had been violated, defendants need not show actual prejudice by demonstrating that the result would have been different absent the violation. Id. at 807.

21.    Instead, the core violation of due process itself is determinative. As the decision explains, "[i]nasmuch as Lane Hollow did not receive notice of the claim when the deprivation could still be prevented, we may not speculate that it could not have been prevented. To one who protests against the taking of his property without due process of law, it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense upon the merits." Id. at 808 (internal citations omitted). Indeed, to require Defendants to show actual prejudice would be at odds with decisions accepting as obvious the

---

[13]    See New York State Nat'l Org. for Women v. Pataki, 261 F.3d 156, 167 (2d. Cir 2001) (declining to rule on whether actual prejudice to a plaintiff's cause of action following a period of extreme government delay constitutes a property deprivation.).

harm suffered by defendants who are unaware of potential litigation when the date for service is extended. Krupski v. Costa Crociere S.P.A., No. 09-337, 2010 WL 2243705, at *8 (June 7, 2010) (Noting that "[a] prospective defendant who legitimately believed that the limitations period had passed without any attempt to sue him has a strong interest in repose."); Zapata v. City of New York, 502 F.3d 192, 198 (2d Cir. 2007) ("It is obvious that any defendant would be harmed by a generous extension of the service period beyond the limitations period for the action, especially if the defendant had no actual notice of the existence of the complaint until the service period had expired . . . "). These decisions suggest that the prejudice the Defendants have suffered is clear from the nature of the deprivation itself, particularly where, when the various facts and Plaintiffs' strategy are now fully revealed, Plaintiffs have not offered any cogent or unique interest that existed in keeping the complaints under seal after the initial Plan was no longer viable.[14] Regardless, the Defendants suffered prejudice as a result of the Extension Orders. For example, had the Defendants been aware of the Complaint when it was filed, they would have been able to successfully move to dismiss for Plaintiffs' failure to establish that the Defendants had received more than they would have under a liquidation. The Defendants' decisions with respect to their new and continuing agreements with the Debtors and their pursuit and resolution of other claims against the Debtors similarly could have been affected by the pending litigation, if then known. The Plaintiffs' assertion and reliance on an amorphous reference to the protection of business relationships cannot be sufficient to infringe on the Defendants' due process rights.

---

[14] The failure to offer a compelling rationale is particularly striking as Plaintiffs must have been aware that this combination of sealing and repeated service extensions was and is literally unprecedented (and fail to cite to any comparable practice by other debtors).

22.     Plaintiffs also point to the interests of the Debtors and other parties who were not

sued in avoiding the need to "needlessly mobilize."[15] However, these utilitarian concerns cannot

justify departure from the Rules, which are designed to protect the interests of those parties

whose rights are *actually* being adjudicated in this proceeding. Parties have a right to know of

legal actions initiated against them so they can plan accordingly, and certainly the Plaintiffs'

justification of seeking to preserve business relationships is disingenuous when applied against

those, such as the Defendants, who continued to do business with the Debtors while the

Complaint was sealed. Plaintiffs cannot justify their wholesale disregard of the Rules by the

interests of non-defendants or their preference to avoid the legal costs attendant to bringing the

avoidance actions.

## II.     THE COMPLAINT FAILS TO PLEAD SUFFICIENT FACTS TO STATE A CAUSE FOR RELIEF AND SHOULD BE DISMISSED

23.     While Plaintiffs essentially concede the fatal inadequacies in their Complaint,

they suggest that they can somehow avoid dismissal by promising some sort of informal

discovery. Plaintiffs cite to no authority that would excuse their failure to comply with the basic

standards of pleading. Instead, after the four and a half years that Plaintiffs had to refine and

perfect their Complaints, such defects require dismissal with prejudice.

24.     First, the inadequacy of the Complaint is not established merely under the

decision in Angell v. Ber Care, Inc. (In re Caremerica, Inc.), 409 B.R. 737 (Bankr. E.D.N.C.

2009), but under the Supreme Court's rulings in Bell Atlantic Corp. v. Twombly, 550 U.S. 544

(2007) and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). As recently noted by the Bankruptcy

Court for the Southern District of Florida, "[h]owever inconvenient it may be for a plaintiff, it is

---

[15]    In fact, the careless manner in which Plaintiffs have by their own admission named non-existent defendants and asserted claims for duplicative and non-existent transfers (Omnibus Response, n. 13, n. 14), belies Plaintiffs' prior representations to the Court that they had invested time to cull the various actions filed under seal.

16

apparent [from Twombly and Iqbal] that the jurisprudential landscape regarding the adequacy of complaints in civil cases has changed."[16] James S. Feltman v. Keybank, N.A. (In re Levitt & Sons, LLC), No. 07-19845-BKC-RBR, 2010 Bankr. LEXIS 1284, at *5 (Bankr. S.D. Fla. Apr. 16, 2010). In light of these decisions, complaints such as the one filed in this action, which fail to allege even the most basic information including even the identity of the transferor and transferee, fail to satisfy the requirements of notice under Rule 8.

25.      While Plaintiffs curiously suggest that this case is distinguishable from Iqbal because Plaintiffs are not seeking to "unlock the doors of discovery,"[17] absent dismissal, Plaintiffs indeed would be able to proceed with discovery (and thereby investigate, rather than merely further confirm the existence of potential avoidable transfers) while the Defendants would remain in the dark with respect to even the most basic facts they are being asked to defend against, including: (i) which of the forty-two Debtor entities made each of the alleged transfers; (ii) which of the seven parties named in the Complaint allegedly received each such transfer; (iii) whether the relevant Defendants were a creditor of the Plaintiffs; and (iv) whether the relevant transfers were made on account of specific and identifiable antecedent debts. See, e.g., Caremerica, 409 B.R. at 751-54.[18]

26.      Plaintiffs' reliance on the Bankruptcy Court's decision in Silverman v. H.I.L. Assocs. (In re Allou Distribs., Inc.), 387 B.R. 365 (Bankr. E.D.N.Y. 2008) is misplaced, both

---

[16]  See also Zucker v. Freeman (In re Netbank, Inc.), 424 B.R. 568, 573 (Bankr. M.D. Fla. 2010) ("Prior to the Twombly decision Plaintiff's complaint may have been sufficient, but in the absence of any specific facts that, if proven, would support a judgment for Plaintiff, Count One of the Complaint must be dismissed.").

[17]  See Joinder in Plaintiffs' Omnibus Response to Motions Seeking, Among Other Forms of Relief, Orders to Vacate Certain Procedural Orders (the "Joinder") ¶ 6.

[18]  See also Valley Media, Inc. v. Borders, Inc. (In re Valley Media, Inc.), 288 B.R. 189 (Bankr. D. Del. 2003) (dismissing preference complaint for failure to identify the nature and amount of antecedent debt, the name of each debtor/transferor, and the name of each transferee). As the Caremerica court noted, while certain cases had departed from Valley Media, they did so under the Conley pleading standards that Iqbal has since rejected, such that Iqbal "breathe[s] new life into the pleading requirements implemented in Valley Media for § 547 preference claims." Caremerica, 409 B.R. at 753.

17

because the <u>Allou</u> decision pre-dated <u>Iqbal</u> and because the complaint in <u>Allou</u> was far more detailed than the Complaint filed in this action. Specifically, the <u>Allou</u> plaintiffs included basic allegations identifying the debtor that made each transfer and the defendant that received each transfer. Even the complaint at issue in <u>Gold v. Winget (In re NM Holdings Co., LLC)</u>, 407 B.R. 232 (Bankr. E.D. Mich. 2009), also cited by Plaintiffs, "identified (1) the name of each debtor/transferor; [and] (2) the name of each defendant/transferee." <u>Gold</u>, 407 B.R. at 256. Plaintiffs' further suggestion that <u>Gold</u> stands for the proposition "that <u>Twombly</u> and <u>Iqbal</u> do not require 'detailed factual allegations'" withers under scrutiny; to the extent that Gold provided any analysis of <u>Twombly</u>, it did so without the benefit of <u>Iqbal</u>'s guidance.[19] (Omnibus Response ¶ 97.)

27.    Instead, cases decided after <u>Iqbal</u> confirm that the Complaint does not meet the requirements of Fed. R. Civ. P. 8(a) on multiple fronts. <u>See</u> <u>Official Comm. Of Unsecured Creditors of Hydrogen v. Leo Blomen (In re Hydrogen, L.L.C.)</u>, No. 08-14139 (AJG), 2010 WL 1609536, at *12 (Bankr. S.D.N.Y. Apr. 20, 2010) (applying Rule 8(a) to dismiss preference claims where pleadings failed to allege "that any transfer was made for or on account of a specific and identifiable antecedent debt owed by the debtor"); <u>Levitt</u>, 2010 Bankr. LEXIS 1284, at **5-6 (applying <u>Iqbal</u> to dismiss a preference complaint, where "Plaintiffs [sic] failure to adequately distinguish identity with respect to various obligors, guarantors, and transferors allegedly involved in the transactions with KeyBank is fatal to Counts I, II, III, IV, and V of the Complaint."); <u>In re McLaughlin</u>, 415 B.R. 23, 27 (Bankr. D.N.H. 2009) ("<u>Iqbal</u> requires the

---

[19]    Even as to <u>Twombly</u>, the <u>Gold</u> court also failed to sufficiently account for the obligations <u>Twombly</u> imposed on plaintiffs, instead "adopt[ing] its [own] reasoning and holding" from a pre-<u>Twombly</u> decision in which it upheld the same complaint as applied to different defendants. The <u>Gold</u> court suggested without explanation that this pre-<u>Twombly</u> analysis was consistent with <u>Twombly</u>. <u>Gold</u>, 407 B.R. at 256.

pleadings to assert facts relating to the nature and amount of the antecedent debt."). Plaintiffs fail to cite to any preference cases decided after Iqbal that hold to the contrary.

28.     Instead, while Plaintiffs essentially concede that the Complaint is inadequate, they suggest that they can somehow moot its non-compliance with Rule 8 by providing informal discovery to the Defendants, after which the Defendants could renew their arguments. Where the defect is one of pleading, Iqbal itself rejects any notion that discovery rather than dismissal is the proper remedy. See Iqbal, 129 S. Ct. at 1953-54 (declining "respondent's invitation to relax the pleading requirements on the ground that the Court of Appeals promises petitioners minimally intrusive discovery . . . . Because respondent's complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise."). Plaintiffs' belated offer to provide the deficient information is particularly disingenuous where their recently proposed case management order would excuse them from making even initial disclosures regarding this very information.[20] Moreover, if Plaintiffs truly are in a position to put Defendants on notice of the basic allegations underlying the Complaint (as the law required when the Complaint was signed by Plaintiffs and filed two and a half years ago), they should have amended their Complaint as of right long ago, within the time permitted by Rule 7015(a)(1)(B). Having failed to do so, Plaintiffs only can amend with leave of the Court.[21] Given the passage of almost five years since the accrual of the purported preference claims, over two and a half years since the passage of the limitations period and almost a year since the confirmation of the Debtors' Modified Plan (when

---

[20]    See Reorganized Debtors' Motion for a Case Management Order Establishing Procedures Governing Adversary Proceedings, dated March 17, 2010 (Docket No. 9), Ex. A. ("exempt[ing Plaintiffs] from the initial disclosure requirements of Bankruptcy Rule 7026(a)(1)"). Unless otherwise noted, all docket citations are to the above-captioned adversary proceeding.

[21]    See Ashley Elizabeth Scianna Arora Inv. Trust v. Amegy Bank, Nat'l Assoc. (In re Bigler LP), Adv. No. 10-03029, 2010 Bankr. LEXIS 1596, at *11 (Bankr. S.D. Tex. May 18, 2010) (under amended Rule 7015, after filing of motion under Rule 12(b), plaintiffs have only 21 days to freely amend, after which they must obtain leave under Rule 7015(a)(2)). Here, even conceding the advantage of every extension in Plaintiffs' favor, their time to amend the Complaint with respect to Defendants expired on April 30, 2010.

19

other alleged, more pressing, reorganizational distractions should have long since passed), it would be improper to now give the Plaintiffs leave to amend the Complaint. While leave is freely granted where justice requires, courts decline to grant such leave where, as here, plaintiffs' dilatory motives have resulted in undue or unexplained delay, or have failed to effectively use prior opportunities to amend to cure the deficiencies. See, e.g., Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993). Plaintiffs claimed in the Extension Motions they were using that time to cull down the thousands of potential actions in order to pursue only those that Plaintiffs' diligence suggested had potential merit.[22] Putting aside that Debtors are required to do such weeding out within, not after, the limitations period, the granting of the Extension Orders already has given Plaintiffs two and a half years to file an amended Complaint. It would be inequitable to now give them even more time to investigate potential claims and commence an action against the Defendants. Id. at 1414 (refusing to permit amendment three years after action was filed where "facts were available to plaintiff . . . before she filed her original complaint," and there were "numerous opportunities to correct any deficiencies in her . . . claim, but [she] failed to take advantage of them [such that] [h]er delay was unreasonable.").

29. The Joinder (which does not serve as a basis for opposing the Defendants' Motion to Dismiss but warrants rebuttal) also suggests that the Defendants' Rule 8 argument should be treated as a motion for a more definite statement under Rule 12(e), which it proposes to moot by

---

[22] Indeed, Plaintiffs weeded out more than 550 of the complaints initially filed, but have not pled even basic facts in support of their remaining 177 claims. See, e.g., Claims Procedures Motion ¶ 30 (seeking authority to abandon "causes of action which the Debtors determine, upon completion of their review . . . would impose costs in excess of the value of any reasonably expected recovery . . . or with respect to which the debtors believe the defendants have valid defenses."). October 2009 Extension Motion ¶ 18 (explaining that after review, "the Debtors ultimately may determine not to prosecute certain of the Adversary Proceedings."). As the Court noted at the hearing on October 22, 2009 approving the October 2009 Extension Motion, "Obviously, the debtors' decision to proceed this way is borne out by the fact that the vast majority of these cases have already been, effectively, booted out. And as the motion states, the potential plaintiff, here, certainly should have a little more time to analyze whether it makes sense to bring the remaining lawsuits or only some of them before DPH and the defendants incur additional costs." Transcript of Oral Argument at 6-7, In re DPH Holdings Corp., et. al., No. 05-44481-RDD (Bankr. S.D.N.Y. Oct. 22, 2009).

20

informally providing additional facts to the Defendants. This argument is contrary to the relevant law.[23] A court will conduct a Rule 12(e) analysis only if the complaint satisfies the threshold requirements of Rule 8, which require a complaint to facially state a cognizable legal claim. Humpherys v. Nager, 962 F. Supp. 347, 353 (E.D.N.Y. 1997) (Noting that a "Rule 12(e) motion should only be made, or a Rule 12(b)(6) motion should only be converted to a 12(e) motion, when the complaint states a cause of action and the party seeking dismissal cannot frame an answer"). Where, as here, the Complaint fails to state a cause of action, it precludes the conversion of the motion to dismiss to a motion under Rule 12(e). Id. Furthermore, courts have found that even a more definite statement under Rule 12(e) requires a plaintiff to file an amended complaint rather than evade actual redress of the insufficiency through informal discovery as Plaintiffs have proposed. Sefton v. Jew, 204 F.R.D. 104, 106 (W.D. Tex. 2000) ("To comply with an order for a more definite statement, the party must submit an amended pleading containing sufficient detail to satisfy the court and to meet his opponent's objections to the earlier pleadings.") (internal citations omitted); F.D.I.C. v. Reiner, 144 F.R.D. 599, 600 (D. Me. 1992) (finding that a successful motion for a more definite statement would require a "complete[] redraw[ing of] the prior pleading to provide the additional factual allegations required in the context of the allegations contained in the prior pleading."). Here, Plaintiffs should not be granted an opportunity to replead, much less an opportunity to cure the facial deficiency in the Complaint through some lesser remedy.

---

[23] Moreover, the authorities Plaintiffs rely on in support of conversion to a Rule 12(e) motion are inapposite. While Plaintiffs cite to Wik v. City of Rochester, No. 07-cv-6541 (CJS), 2008 WL 4911805, at *20 (W.D.N.Y. Nov. 13, 2008), the Wik defendants "set forth no authority" whatsoever in support of the dismissal of the complaint under Rule 8(a). Similarly, in Pell v. Pall Corp., No. CV 07-92 (LDW), 2007 WL 2445217, at *2 (E.D.N.Y. Aug. 20, 2007), the defendant moved under Fed. R. Civ. P. 12(e) as well as Fed. R. Civ. P. 8, and the Fed. R. Civ. P. 8 argument was assessed prior to the Supreme Court's decisions in Twombly and Iqbal.

## III. THE COMPLAINT IS BARRED BY JUDICIAL ESTOPPEL AND LACHES

### A. Plaintiffs Are Judicially Estopped From Relitigating Their Prior Positions

30.     As outlined in the arguments set forth in the motions to dismiss the complaint filed by other defendants including Affinia Group Holdings, Inc., et al. (07-02198), which arguments are adopted and incorporated herein by reference, when read in their entirety, the Extension Motions make clear that Plaintiffs actually abandoned certain classes of avoidance claims, as blessed by this Court. In light of such abandonment, Plaintiffs are estopped from now litigating those claims.

31.     Patently mischaracterizing their prior position, Plaintiffs argue that claims against foreign defendants and claims under $250,000 were not abandoned because they only sought authority to abandon such claims in their prior motions, and did not actually abandon them. This argument is belied by the plain text of the Extension Motions and the Extension Orders. Plaintiffs' Preservation of Estate Claims Procedures Motion explicitly stated that for preference claims relating to payments to foreign suppliers, "the debtors, in their business judgment, *have decided* [they] should not be pursued." (Preservation of Estate Claims Procedures Motion ¶ 15) (emphasis added). Indeed, the Preservation of Estate Claims Procedures Motion expressly lays out the consequence of such abandonment on the number of potential avoidance actions remaining, stating that the abandonment of claims under $250,000 would result in the original potential 11,000 claims identified by the Debtors being reduced to about 1,000 claims. Id. This motion also failed to establish any further steps or procedures that they required prior to the formal abandonment of these claims.[24] Instead, the Court granted the Preservation of Estate Claims Procedures Motion in its entirety.

---

[24]    The Debtors were certainly aware of how to frame such procedures, as the Preservation of Estate Claims Procedures Motion did identify certain categories of claims that could only be abandoned on further notice and

22

32. The Debtors' abandonment of these claims is final and cannot be reversed, regardless of any later statements to the contrary. In re Grossinger's Assoc., 184 B.R. 429, 432 (Bankr. S.D.N.Y. 1995) (citation omitted) ("abandonment constitutes a divestiture of all interests in property that were property of the estate . . . Abandonment, once accomplished, is irrevocable, regardless of any subsequent discovery that the property had greater value than previously believed. Abandonment under section 554 removes the property in question from the bankruptcy estate and causes the trustee to lose all interest, rights and control with respect to the abandoned property."). As such, Plaintiffs cannot obfuscate their clear and unambiguous intention to abandon the claims by reference to subsequent recharacterizations in the disclosure statement suggesting that the Debtors had not yet exercised their abandonment authority. Having clearly expressed their intention to abandon categories of claims and obtained Court authority to do so, Plaintiffs cannot relitigate or recharacterize the abandonment, either through the disclosure statement or these proceedings.

33. Plaintiffs are further precluded from pursuing these claims because they were not adequately preserved in the Modified Plan.[25] Plaintiffs try to gloss over the deficiency by not addressing the lack of notice provided to the Defendants of potential claims against them in the retained action list in Modified Plan exhibit 7.19. While Plaintiffs quote at length from the Modified Plan's disclosure concerning the retention of "Retained Actions," they have no response to the inherent deficiency that the schedule of such Retained Actions consisted of nothing more than a list of sealed adversary docket numbers, which did not put the Defendants

---

consultation, such as preference claims against insiders. See Preservation of Estate Claims Procedures Motion ¶ 25 ("if the preference action is against an insider . . . then the Debtors would be authorized to abandon such actions after notice to the Statutory Committees.").

[25] As described in the Motion to Dismiss and the replies to the Omnibus Response filed by other defendants, the claims also are barred by *res judicata* based on the Debtors' abandonment of these claims in their Plan. (Plan ¶ 7.24; Exhibit 7.24 to the Plan ¶ 17).

23

on notice of any claims and rendered it impossible for creditors to determine whether their rights were implicated by the preservation of any Retained Actions.[26] The cases Plaintiffs cite are similarly inapposite, as in those cases the debtors reserved rights on all preference or avoidance actions, not merely a select few following the disclosed abandonment of most potential claims.[27] By contrast, where Plaintiffs had abandoned or foreclosed some but not all avoidance actions, the failure to provide any case-specific disclosure rendered it impossible for creditors to know whether any potential preference actions *against them* were abandoned or were included in one of the unspecified, sealed complaints that made up the list of "Retained Actions." Under these circumstances, especially where Plaintiffs offer no reason why the Complaint had to remain under seal at such a late stage, the disclosure was inadequate to permit retention. See Kunica v. St. Jean Fin. Inc., 233 B.R. 46, 56 (Bankr. S.D.N.Y. 1999) ("the litigation disclosures in [the] [Disclosure Statement] were also inadequate. [The debtor] merely indicated that it would retain certain unenumerated and unvalued causes of action against various unnamed parties.").

**B.      The Complaint Should Be Dismissed Because Plaintiffs Have Failed To Establish That It Would Be Inequitable To Apply Laches**

34.      In an effort to avert dismissal, Plaintiffs attempt to improperly shift the burden to the Defendants to justify dismissal of the Complaint. While under other circumstances laches is considered an affirmative defense, where the Defendants only received notice of the Complaint after the statute of limitations elapsed, the Plaintiffs have the burden to establish that it would be

---

[26]    Moreover, Modified Plan exhibit 7.19 was filed on July 2, 2009 — after the Debtors had begun solicitation of the Modified Plan, 13 days before the deadline to object to the Modified Plan and a mere 28 days before the Modified Plan was confirmed. The "Summary of Material Modifications to the Confirmed Plan" in the related Disclosure Statement also failed to mention any change in the number of retained actions. (Case No. 05-44481, Docket No. 17031, at S-viii-S-xii).

[27]    See, e.g., Cohen v. Tic Fin. Sys. (In re Ampace Corp.), 279 B.R. 145, 161 (Bankr. D. Del. 2002) (finding that "when a plan or disclosure statement contains a *general* reservation of a trustee's right to pursue [all] 'preference actions' or 'avoidance actions' post-confirmation, those creditors also know that there is a possibility that they may be the target of one of those actions.").

inequitable to dismiss the suit as barred by laches. "When a suit is brought within the time fixed by the analogous statute, the burden is on the defendant to show . . . circumstances exist which require the application of the doctrine of laches. On the other hand, when the suit is brought after the statutory time has elapsed, the burden is on the complainant to aver and prove the circumstances making it inequitable to apply laches to his case." Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187, 191 (2d Cir. 1996). As Plaintiffs do not allege any facts rendering the application of laches inequitable, the Complaint must be dismissed. Verkouteren v. Blackrock Fin. Mgmt., Inc., No. 99-9005, 2000 WL 298255, at *2 (2d Cir. Mar. 21, 2000)(affirming 12(b)(6) dismissal for failure to plead facts rebutting presumption, noting that "assess[ing] the Complaint in light of this statutory presumption . . . did not establish a heightened pleading requirement but simply considered whether [plaintiff] alleged facts that would, given the requirements set by Congress, be sufficient . . . ."). Also contrary to Plaintiffs' position, courts in the district have held laches can serve as grounds for dismissal under Rule 12(b)(6), without the need for an opportunity for discovery or the introduction of evidence. LinkCo, Inc. v. Akikusa, 615 F. Supp. 2d 130, 142 (S.D.N.Y. 2009) ("it has also been held in this district and Circuit that the defense of laches may be resolved on a motion to dismiss where it is clear on the face of the Complaint that 'the plaintiff can prove no set of facts to avoid the insuperable bar.'").

## IV. THE COMPLAINT MUST BE DISMISSED FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO TIMELY SERVE PROCESS AS TO THE FOREIGN DEFENDANTS

35.     The defects in the Complaint preclude a finding that the Court has personal jurisdiction over foreign defendants HP Enterprise Services UK Ltd. and Hewlett-Packard (Canada) Co.[28]  While Plaintiffs argue in their opposition that the alleged preferential payments

---

[28]     Plaintiffs also have named additional defendants that are not separate legal entities, including "EDS", "EDS Corp.", "Electronic Data Systems", and "Electronic Data Systems DE." The Defendants have moved to dismiss

25

arise out of contacts between the Defendants and the Debtors, who are U.S. corporations, the Complaint contains no such allegation. The Complaint does not even plead that the Debtors are U.S. corporations, much less information on any purported contacts out of which the alleged payments arose. The absence of any such allegations has heightened significance for the foreign defendants, as Plaintiffs have failed to make allegations sufficient to satisfy their burden to make a prima facie showing of personal jurisdiction over defendants. Anchor v. Novartis Grimsby Ltd., 282 App'x 872, 874 (2d Cir. 2008) ("Plaintiffs must make a prima facie showing that jurisdiction exists to survive a motion to dismiss for lack of personal jurisdiction.") (citation omitted). Plaintiffs cannot avert dismissal for failure to make basic jurisdictional allegations by attempting to amend their Complaint through their brief. See Islam v. Goord, No. 05-cv-7502 (RJH), 2006 U.S. Dist. LEXIS 71853, at *1 n.2 (S.D.N.Y. Sept. 29, 2006) (citation and quotation omitted) (calling it "axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss").

36.    Moreover, none of the cases cited by Plaintiffs support their argument that service on a co-defendant affiliate satisfies their service obligations. Itel Container Int'l Corp. v. Atlanttrafik Express Serv., Ltd., 686 F. Supp. 438, 444 (S.D.N.Y. 1988), rev'd on other grounds, 982 F.2d 765 (2d Cir. 1992), relied on by Plaintiffs, shows why Plaintiffs' argument is particularly inappropriate given the fact of this case.[29] The Itel plaintiffs attempted service on certain defendants under the Hague Convention *three days* after the complaint was filed.  Service

those purported defendants, who should be struck from the Complaint and the case dismissed as against them, in accordance with Plaintiff's concession on the dismissal of "non-entity / non-existent defendants." See Omnibus Reply, n. 13.

[29]    Plaintiffs' citation to Zenith Radio Corp. v. Matsushita Elec. Indus. Co., 402 F. Supp. 262, 329 (E.D. Pa. 1975) is equally unavailing.  While Zenith suggests in dicta that certain defendants where adequately served through service on affiliated co-defendants, in that case the court found the corporate subsidiaries to be agents and alter egos of the foreign parents.  In any event, while Plaintiffs inaccurately cite Zenith as a case from this district, it is a Pennsylvania case, which is by no means binding on this Court.

26

failed due to a mistake in the address, and the defendants did not dispute that it was reasonable for plaintiffs to have relied upon their source of address. Here, *two and one half years* after filing the complaint, Plaintiffs apparently still have never even attempted to serve HP Enterprise Services UK Ltd. with the Complaint.[30]

37.     It is the Plaintiffs' burden to establish a basis for inferring that service on HP Enterprise Services UK Ltd. through Hewlett-Packard (Canada) Co. was proper.[31] Nowhere do Plaintiffs allege that HP Enterprise Services UK Ltd. authorized Hewlett-Packard (Canada) Co. to accept service on its behalf, or that it is a parent or alter ego of any of its co-defendants. Consequently they have failed to make a prima facie showing of sufficient service of process on HP Enterprise Services UK Ltd., and should not be granted yet another opportunity to serve the Complaint now given their failure to even *attempt* service after four and half years, four Extension Orders and an Emergency Motion for Order Extending Deadline to Serve Process for Certain Avoidance Actions that does not reference HP Enterprise Services UK Ltd.

---

[30]  Notably, to date, the Plaintiffs still have not filed an affidavit of service confirming that any of the Defendants have been served with the Complaint.

[31]  See O'Callaghan v. Sifre, 242 F.R.D. 69, 74 (S.D.N.Y. 2007) (holding that service of an amended complaint under Rule 5 on one of the defendants at the law firm where his co-defendant law partner also worked was insufficient because, "[n]owhere do the Rules permit two separate parties to be served with a single copy of a pleading, absent their consent."); AICPA v. Affinity Card, Inc., 8 F. Supp. 2d 372, 376 (S.D.N.Y. 1998) (noting that "The burden is on the plaintiff to show a basis for an inference that the defendant has authorized a particular person to accept service of process on its behalf."); Vallejo v. Investronica, Inc., 2 F. Supp. 2d 330, 335 (W.D.N.Y. 1998) (plaintiff failed to sustain its burden of establishing proper service where it "failed to demonstrate a lack of corporate separateness" between a foreign defendant and its wholly-owned U.S. subsidiary that would permit the subsidiary to be the parent's agent for service of process.); S.E.C. v. Gilbert, 82 F.R.D. 723, 726 (S.D.N.Y. 1979) (service on a shareholder of a foreign defendant without other efforts to serve was not legally sufficient as nothing in the record supported an inference of agency for receipt of process, even if defendant had actual notice.).

## CONCLUSION

38.     For the foregoing reasons, the Defendants respectfully request that the Court (i)

dismiss the Complaint with prejudice, (ii) vacate the Extension Orders and the Modified Plan

Confirmation Order as against the Defendants pursuant to Fed. R. Civ. P. 60(b), as made

applicable by Fed. R. Bankr. P. 9024 or otherwise to the extent necessary to grant relief, (iii) and

grant such other and further relief as the Court may deem just and proper.


Dated: New York, New York
      July 2, 2010

              Respectfully submitted,
              CLEARY GOTTLIEB STEEN & HAMILTON LLP

              By: Lisa M. Schweitzer, Esq.
              One Liberty Plaza
              New York, New York 10006
              Telephone:  (212) 225-2000
              Facsimile:  (212) 225-3999

              *Attorneys for Defendants HP Enterprise Services, LLC,*
              *formerly known as Electronic Data Systems Corporation,*
              *HP Enterprise Services UK Ltd, formerly known as*
              *Electronic Data Systems Ltd. and EDS Canada, Inc., now*
              *Hewlett-Packard (Canada) Co. by operation of merger*